PASQUALE MONTEROSSO ET AL. *vs.* MORRIS KENT.

Third Judicial District, Bridgeport, April Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled.

Where such estoppel is claimed as to the title of real property, the party claiming to have been influenced by the conduct or declarations of another must be destitute of knowledge not only of the true state of the title, but also of any convenient and available means of acquiring such knowledge; and where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel.

Every person who takes a conveyance of an interest in real estate is conclusively presumed to know those facts which are apparent upon the land records concerning the chain of title of the property described in the conveyance.

A landowner, about to erect a building or fence near a division line, must investigate all convenient available means to determine the division line, and so locate it and then respect it in his operations. He cannot force his neighbor, who has knowledge of his proposed operations, to investigate them and to prevent any invasion of such neighbor's land, under penalty of losing title to so much of the land as has been invaded, if the neighbor fails to discover and prevent the invasion, even though he had no intent to deceive the invader and was not guilty of gross negligence.

In the present case the defendant erected a six-family tenement so that it encroached upon his neighbor's land. Thereafter he set up a fence enclosing still more of the neighbor's land. During the

building of the tenement the neighbor, who lived a block and a half away, was repeatedly on the premises, and, when the fence was built, he acquiesced in and confirmed its erection, though, so far as appears, he was not aware that either fence or building encroached on his land. There was never any intentional, deceitful, or fraudulent concealment of any facts by him (the neighbor) concerning the location of the true division line between the properties. *Held* that there was no negligence on the neighbor's part so gross as to amount to a constructive fraud, or to indicate an intent to deceive; that the defendant might equally with the neighbor have examined and applied the recorded deeds and thus ascertained the true division line, and hence that the neighbor's successors in title were not estopped from asserting his title to the land upon which the defendant had encroached.

Argued April 14th—decided June 1st, 1921.

ACTION in the nature of ejectment, brought to and tried by the Superior Court in New Haven County, *Kellogg, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs. *Error and new trial ordered.*

*George W. Crawford,* for the appellants (plaintiffs).

*Jacob Caplan* and *Sidney C. Rosenberg,* for the appellee (defendant).

CURTIS, J.   In June, 1911, Henry H. Johnson purchased and received a conveyance from the estate of M. Sonnenberg of a lot of land in New Haven bounded on the east by Orchard Street, fifty feet in width and one hundred and twenty-five feet in depth.

In February, 1912, the defendant purchased from the estate of W. W. Thomas a parcel of land adjoining and south of Johnson's lot. This parcel had a frontage on Orchard Street of about one hundred and forty feet, and lay along the entire depth of the Johnson lot, and extended twenty-five feet beyond it. A board fence was built by the defendant in 1913 on what he then supposed

to be the division line between his property and that of said Johnson. Where this fence stood in 1913, the record does not disclose. Before July, 1915, the defendant decided to build a six-family tenement house upon his parcel of land on Orchard Street, and had plans made by an architect. The plans indicated that the defendant would need a small strip of land from the Johnson lot to provide convenient space for the erection of this tenement.

In July, 1915, Johnson sold and deeded, for this purpose, to the defendant, an irregular strip of land adjoining the parcel of the defendant on Orchard Street extending in depth one hundred and twenty-five feet along the defendant's land, having a width of one foot to a depth of fifty feet from Orchard Street, and then a width of three feet to the rear of the lot. This irregular strip of land was correctly measured and marked out on the land by the defendant in the presence of Johnson, who confirmed the measurements.

In March, 1916, the defendant began the erection of the six-family tenement, and built it so that it was located in part beyond the irregular strip of land purchased from Johnson in July, 1915, upon a portion of Johnson's land. The northerly side of the building encroached upon Johnson's land one and eighty-five hundredths of a foot at its east end, and three and fifteen-hundredths of a foot at its west end. After the building of the tenement, the defendant moved and set up the board fence, built by him in 1913, so as to enclose the tenement and a portion of Johnson's land. Johnson acquiesced in and confirmed the location of this fence. It does not appear that Johnson then knew that this fence encroached upon his land.

During the building of the tenement, Johnson was repeatedly upon the premises, and he lived one block and a half from where said building was being erected. At

no time during the erection or removal of the fence, or the building of the tenement, did Johnson, his agents, legal representatives, or successors in title, or any of them, intentionally conceal from the defendant any facts concerning the true division line between the two properties; nor did they, or any of them, deceive the defendant or practice any fraud upon him in relation to the location of the fence or tenement. So far as the record discloses, Johnson was not aware that the defendant's building was being erected in part upon his land.

Johnson died November 21st, 1916. This action is being prosecuted by George W. Crawford, the administrator d. b. n. on the estate of Henry H. Johnson, who is joined therein by the heirs and the successors in title of Johnson as ancillary parties.

Upon the foregoing facts the court held that the plaintiffs were estopped by Johnson's conduct, from asserting title and right of possession to the land lying between the fence, as located in 1916, and the undisputed southerly boundary line of Johnson's land as disclosed by the deeds.

The record in short presents this situation: The defendant, after the purchase of the strip of land from Johnson in 1915, marked out the new division line between their land; he then proceeded to build a tenement house so that a portion of it extended beyond this division line upon the land of Johnson. The defendant then enclosed by a fence a portion of Johnson's land, including that upon which the tenement extends. The defendant claims that he has acquired an equitable title to this land of Johnson so enclosed, by an estoppel arising, in substance, from the following facts: Johnson lived one and a half blocks from the premises during the building operations. He was repeatedly upon the premises while the building operations were going on. After

the building was completed he acquiesced in and confirmed the location of the fence where it was then set up, but it does not appear that he knew that it was set up on his land.

The construction of the finding most favorable to the defendant, is that by some misapprehension of the location of the true boundary line between him and Johnson, his building encroached upon Johnson's land, and that, continuing under this misapprehension, he moved the fence upon Johnson's land so as to enclose the building already erected; that Johnson failed to apprehend and prevent such encroachments before they were made, although he was frequently on the premises, and had the means of knowing where the division line between his lot and the land of the defendant was.

Upon the above facts the defendant claims that he has acquired title to a portion of Johnson's land  by way of equitable estoppel.   The law applicable to this contention is stated in *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326, where the principles of law underlying the application of the doctrine of equitable estoppel in transferring title to land, are summarized as follows: "For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury.   Where the estoppel relates to the title of real property, it is essential to the application of the doctrine, that the party claiming to have been influenced by the conduct or declarations of another was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth,

there is no estoppel." See also 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 807.

In this connection the law as stated in *Beach* v. *Osborne*, 74 Conn. 405, 412, 50 Atl. 1021, is pertinent: "Every person who takes a conveyance of an interest in real estate is conclusively presumed to know those facts which are apparent upon the land records concerning the chain of title of the property described in the conveyance, and . . . this presumption of knowledge is for all legal purposes the same in effect as actual knowledge. The next step of inexorable logic is that in determining the good faith and belief of a person as respects the title to property which he assumes to own, for the purpose of adjusting conflicting equities, his good faith and belief must be one which is consistent with actual knowledge of the facts affecting his title which are apparent upon the land records. He cannot plead ignorance of what the law says he is conclusively presumed to know."

It is conceded that there was no intentional, deceitful, or fraudulent concealment of any facts by Johnson concerning the location of the true division line between these properties.

The facts found show that there was no negligence on the part of Johnson so gross as to amount to a constructive fraud, or to indicate an intent to deceive the defendant. It is not found that Johnson discovered that there was an encroachment on his land at any time while the building was being built or when the fence was moved. The facts as to Johnson's conduct obviously do not disclose a situation where he is estopped to claim title to his land. Furthermore, it appears from the facts that the conduct of the defendant was such as to bar him from invoking the doctrine of equitable estoppel in his own behalf. It appears that he had knowledge of a convenient and available means of acquiring knowledge

of the location of the division line between him and Johnson, by examining and applying the recorded deeds, and had in fact recently correctly marked the division line, and, further, that both he and Johnson had the same convenient and available means of ascertaining the true location of the division line between their adjoining land.

It is primarily the duty of an adjoining landowner about to erect a building or fence near a division line to investigate all convenient available means to determine the division line and so locate it, and then to respect it in his operations. He cannot disregard this duty and cast upon his neighbor, who has knowledge of the proposed operations, the duty of investigating his operations and preventing any invasion of the neighbor's land, under the penalty of losing title to so much of his land as the adjoining owner invades if the neighbor fails to discover and prevent the invasion, although he had no intent to deceive the invader, and was not guilty of gross negligence in the premises.

Under the facts the plaintiffs are not estopped from asserting the title of Johnson to the land in question.

There is error and a new trial is ordered.

In this opinion the other judges concurred.